Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 06-31447 (LMW) |
| ROGER JOHN TRAVERSA, | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| | | | |
| ROGER JOHN TRAVERSA, | ) | ADV. PRO. NO. | 06-3109 |
| PLAINTIFF | ) | DOC. I.D. NOS. | 187, 250, 281, 284, 291, 293 |
| vs. | ) | | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, ET AL., | ) | | |
| DEFENDANTS. | ) | | |

**APPEARANCES**

| | |
|---|---|
| Roger John Traversa<br>114 Harmony Hill Road<br>Harwinton, CT 06791 | *Pro Se* Plaintiff/ Movant[1] |
| Irve J. Goldman, Esq.<br>Pullman & Comley, LLC<br>850 Main Street<br>Bridgeport, CT 06604 | Attorney for Educational Credit Management Corporation, Defendant/ Respondent |

---

[1] The above-referenced plaintiff is a licensed attorney who is not admitted to practice in Connecticut.

Student Loan Corporation  Non-Appearing Defendant Respondent
c/o CT Corporation
One Commercial Plaza
Hartford, CT 06103

## MEMORANDUM OF DECISION AND ORDER RE: MOTIONS IN LIMINE AND MOTION TO COMPEL

Lorraine Murphy Weil, United States Bankruptcy Judge

Before the court are (a) the above-referenced plaintiff's (the "Plaintiff") Motion in Limine (Doc. I.D. No. 187, as supplemented by Doc. I.D. No. 246, the "First Motion in Limine")[2] which seeks to exclude (among other things) certain exhibits contained in Educational Credit Management Corporation's ("ECMC") List of Witnesses and Exhibits (Doc. I.D. No. 200); (b) ECMC's objection (Doc. I.D. No. 250, as amended by Doc. I.D. No. 260, the "First Limine Objection") to the First Motion in Limine; (c) the Plaintiff's Second Motion in Limine (Doc. I.D. No. 281, the "Second Motion in Limine"); (d) ECMC's Motion To Compel Production of Documents and for Sanctions (Doc. I.D. No. 284, the "Motion To Compel"); (e) the Plaintiff's objection (Doc. I.D. No. 291, the "Motion To Compel Objection") to the Motion To Compel; and (f) ECMC's objection (Doc. I.D. No. 293, the "Second Limine Objection") to the Second Motion in Limine.[3]  The court has

---

[2]  Citations herein to the docket of this adversary proceeding appear in the following form: "Case Doc. I.D. No. ___."

[3]  The court also considers the Plaintiff's Reply (Doc. I.D. No. 280) to the First Limine Objection and the Plaintiff's Reply (Doc. I.D. No. 294) to the Second Limine Objection.

- 2 -

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[4]

## I. THE RELEVANT MATTERS

### A. The First Motion in Limine and the First Limine Objection

The First Motion in Limine seeks to exclude at trial of this adversary proceeding the following exhibits (the "Exhibits"):

- Plaintiff's Response to ECMC's First Set of Interrogatories and First Request for Production

- Plaintiff's First Supplemental Response to ECMC's First Set of Interrogatories and First Request for Production

- Plaintiff's Second Supplemental Response to ECMC's First Set of Interrogatories and First Request for Production

- Residential Tenancy Agreement

- Documents relating to application and admission to Pennsylvania Bar

- Tax filing documents for the years 2005, 2004, 2003 and 2001

- Educational documents, including a law school report, college transcripts and letters of recommendation

- Budget

(*See* Doc. I.D. No. 187 at 28.) In addition to the foregoing, the Plaintiff seeks to exclude and/or limit any evidence ("Additional Evidence") that ECMC may seek to introduce with respect to the three

---

[4] That order referred to the "Bankruptcy Judges for this District *inter alia*" all proceeding arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . ."

- 3 -

prongs of *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (1987), because, the Plaintiff argues, each prong has been established as a matter of law. Consequently, the Plaintiff continues, a trial is unnecessary and would waste scarce resources and the Exhibits and/or any Additional Evidence is immaterial, irrelevant and would only serve to harass and/or embarrass the Plaintiff. (*See* First Motion in Limine.)

In the First Limine Objection, ECMC argues that the Plaintiff bears a "rigorous" burden to make an initial showing of "undue hardship" under Bankruptcy Code § 523(a)(8) by a preponderance of the evidence. (Doc. I.D. No. 260 at 3.) Further, ECMC argues, the inquiry required by *Brunner* is a "fact-intensive" one. (*Id.*) ECMC further argues that the regulations of the Department of Education in respect of the American with Disabilities Act are not relevant to an inquiry under Section 523(a)(8).

**B.     The Second Motion in Limine and the Second Limine Objection**

The Second Motion in Limine seeks to exclude evidence sought by ECMC in its March 3, 2008 Request for Document Production (the "Request for Production"). The Request for Production sought all documents concerning any discussions and/or communications with the Student Loan Corporation (the "SLC") with respect to any settlement or negotiation of such private loans. The Plaintiff asserts that such information is privileged and is protected and immune from discovery by Rule 26 of the Federal Rules of Civil Procedure ("Rule 26") and is inadmissible and immune from discovery under Rule 408 of the Federal Rules of Evidence ("Rule 408").

In the Second Limine Objection, ECMC responds that information pertaining to settlement negotiations is admissible and discoverable evidence under Rule 408 since (1) ECMC is not seeking to challenge the validity or amount of the private loans, (2) such information bears directly on the

*Brunner* "good faith" inquiry and (3) ECMC is permitted to use any such information to challenge the credibility of the Plaintiff.

### C. The Motion To Compel and the Motion To Compel Objection

Pursuant to Rules 34 and 37 of the Federal Rules of Civil Procedure, the Motion To Compel seeks to compel the Plaintiff to produce documents responsive to the Request for Production.[5] The Motion To Compel Objection objects to the Motion To Compel for essentially the same reasons asserted in the Second Motion in Limine.

## II. ANALYSIS

### A. Motions in Limine (In General)

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Id.* The foregoing standard has been deemed a "high "standard" to meet. *See Hawthorne Partners v. AT&T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N. D. Ill. 1993). Further, the court may deny a motion *in limine* "where it is too sweeping in scope." *Weiss v. La Suisse, Société D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 407 (S.D.N.Y. 2003).

---

[5] The Motion To Compel also seeks, pursuant to Fed. R. Civ. P. 37(b)(4)(A), to impose sanctions (in the amount of attorney's fees expended to prepare and prosecute the Motion To Compel) against the Plaintiff for his failure to produce the documents without any valid basis. The court defers decision on the sanction portion of the Motion To Compel until trial of this adversary proceeding.

**B.      The First Motion Limine and the First Limine Objection**

This court previously directed the Plaintiff to focus his arguments and evidence in this adversary proceeding *solely* on his burden of proving that he is entitled to discharge his student loan obligations under 11 U.S.C. § 523(a)(8) and the interpretive standard of "undue hardship" established in *Brunner*, 831 F.2d 395.[6] (*See* Doc. I.D. No. 82). "The determination of undue hardship is case- and fact- specific." *Congdon v. ECMC (In re Congdon)*, 365 B.R. 433, 436 (Bankr. D. Vt. 2007).[7] Moreover, a debtor bears a "heavy burden" to establish undue hardship. *Kelly v. Sallie Mae Servicing and Educ. Credit Mgmt. Corp. (In re Kelly)*, 351 B.R. 45, 52 (Bankr. E.D.N.Y. 2006). *See also Mulherin v. Sallie Mae Servicing Corp. (In re Mulherin)*, 297 B.R. 559, 566 (Bankr. N. D. Iowa 2003) (noting that the standard for discharging students loans was intentionally set at a "very high level").

Because the *Brunner* standard is a difficult standard to meet and because, as discussed below, the court disagrees with the Plaintiff that he has satisfied the *Brunner* inquiry as a matter of law, the

---

[6] Under *Brunner*, undue hardship is determined according to a three-part test: (1) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for himself and his dependent(s) if forced to repay the loan; (2) additional circumstances exist to indicate that this state of affairs is likely to persist for a significant portion of the repayment period; and (3) the debtor has made good faith efforts to repay the loan. *Id.* at 396. *See also Fowler v. Connecticut Student Loan Found. (In re Fowler)*, 250 B.R. 828, 830 (Bankr. D. Conn. 2000) (Krechevsky, J.).

[7] *See also Curiston v. Connecticut Student Loan Found. (In re Curiston)*, No. 03-2097, 2004 WL 5200738, *1 (Bankr. D. Conn. Dec. 22, 2004) (Krechevsky, J.), *aff'd*, 351 B.R. 22 (D. Conn. 2006) ("Whether student loan repayment would impose an 'undue hardship' on the debtor is necessarily a fact-sensitive determination and the parties, accordingly, presented extensive evidence concerning several aspects of the debtor's circumstances, including her medical history, education, employment history and living expenses.").

court determines that the Exhibits will not be deemed inadmissible on the grounds asserted by the Plaintiff and the First Motion in Limine will be denied.

### 1. First *Brunner* Prong ("current income and expenses")

The Plaintiff argues that the "means test," *see* 11 U.S.C. § 707(b)(2), as promulgated by the Bankruptcy Abuse Prevention Consumer Protection Act ("BAPCPA"), should be used to calculate his current income and expenses under the above-referenced prong of *Brunner*. Under the "means test" formulation, the Plaintiff argues, "current income is established on the date a debtor files a petition for bankruptcy as the average income for the six months prior to that date . . . [and] [c]urrent expenses is [sic] established as of the date of discharge . . . ." (Doc. I.D. No. 187 at 20.) Therefore, the Plaintiff argues, evidence of current income and expenses should be limited to the Plaintiff's schedules. The court disagrees.

Because *Brunner* requires that the court assess "*current* income and expense," *Brunner*, 831 F.2d at 396, the court determines that such a determination should be made as of the date of trial. *Cf. Lien v. U.S. Dep't of Health & Human Servs.,* 224 B.R. 431, 434 (Bankr. D. Alaska 1998) ("The law seems to be almost universal that the court is not restricted to the debtor's circumstances on the petition date in making a determination regarding undue hardship . . . .") The Schedules are not precluded from use at trial but they will not be the end of the analysis required under the first prong of the *Brunner* test.

### 2. Second *Brunner* Prong ("additional circumstances")

With respect to the second prong of *Brunner*, the Plaintiff argues that a determination of total and permanent disability and an inability to work long term was made by the Connecticut Department of Social Services ("DSS") and the Social Security Administration ("SSA") and such

determination "as a matter of law" constitutes "additional circumstances" under *Brunner*. The Plaintiff further argues that, because two administrative agencies with particular knowledge of disabilities determined the Plaintiff to be disabled, this court is barred from adjudicating the issue of his disability by the doctrine of primary jurisdiction. ECMC responds that the doctrine of primary jurisdiction is not applicable as the doctrine applies only where an agency has been entrusted to administer a "statutory scheme" and no agency was entrusted with the task of administering the Bankruptcy Code. (*See* Doc. I.D. No. 250 at 7 n.3.)

The doctrine of primary jurisdiction "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Johnson v. Nyack Hospital*, 964 F.2d 116, 122 (2d Cir. 1992) (citation and internal quotation marks omitted). The doctrine "thus recognizes that even though Congress has not empowered an agency to pass on the *legal* issues presented by a case raising issues of federal law, the agency's expertise may, nevertheless, prove helpful to the court in resolving difficult *factual* issues." *Id.* (emphasis in original). In determining whether the primary jurisdiction doctrine applies, the court must make a "threshold" finding that "the agency has jurisdiction over the issue presented." *Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (2d Cir. 1996). However, the doctrine "should be used sparingly, particularly where Congress has decided that the courts should consider an issue." *United States v. Henderson*, 416 F.3d 686, 691 (8th Cir. 2005), *cert. denied*, 546 U.S. 1175 (2006). Here, the court concludes that the doctrine of primary jurisdiction should not be invoked in this adversary proceeding to grant preclusive effect to any determination of disability allegedly made by the DSS or the SSA.

The Plaintiff states that a "determination letter" dated May 1, 2007 from the DSS concludes that he is totally and permanently disabled and is unable to work long term.[8]  However, that "determination letter" may be admissible as some evidence that the Plaintiff is (and will continue to be) disabled and unable to work.  *Cf. Congdon*, 365 B.R. at 439-42 (addressing the issue of the admissibility of a Social Security ALJ's notice of decision in a Code § 523(a)(8) action, the court determined that because the notice of decision contained factual findings resulting from a factual investigation, the document was presumed to be trustworthy under Fed. R.. Evid. 803(8)(C) and could be admitted into evidence).[9]  Further, any such document (if admissible) may have some weight but will not have a preclusive effect on the issue of whether any disability exists and will likely persist for a significant portion of the loan repayment period.  *Cf. Congdon*, 365 B.R. at 442-44 (concluding that notice of decision was entitled to "limited weight" and not preclusive effect because the "issues and standards involved in Congdon's Social Security proceeding are wholly distinct from the issues and standards applicable to this proceeding.").

The issue that this court must decide is whether the Plaintiff has satisfied his burden of proving undue hardship with respect to repayment of his student loans so that such loans may be deemed dischargeable.  That issue was not before the DSS or the SSA and therefore could not have been resolved by them.  Moreover, a determination of dischargeability is a core proceeding wholly

---

[8]   That letter was made a part of the record before this court at a prior hearing.  There is no "determination letter" from the SSA in the record.  (*See* Doc. I.D. No. 246 at 4 n.2) (The SSA "also made a determination favorable to the [Plaintiff] . . . but as the decision is not, and will not be, final for some time the decision need not be entered and the presumption of the claimed disability remains.").)

[9]   The court reserves a decision of admissibility of the relevant DSS and SSA "determination letters" until trial.

within the jurisdiction of the bankruptcy court. *See* 28 U.S.C. § 157(b)(2)(I). Accordingly, because Congress has decided that issues of dischargeability are within the "special competence" of the bankruptcy court and because the resolution of that issue does not require the expertise of either the DSS or the SSA, the doctrine of primary jurisdiction is inapplicable here.[10]

### 3.   Third *Brunner* Prong ("good faith")

With respect to the third prong of *Brunner*, the Plaintiff argues that ECMC should be "prohibit[ed] . . . from any examination of Plaintiff's former employment or earnings or potential future employment or earning." (Doc. I.D. No. 187 at 25.) The Plaintiff argues that ECMC should be restricted to its records of the Plaintiff's payment history, which history is incontrovertible, since BAPCPA "remove[d] any analysis [from the good faith prong] regarding efforts to maximize employment and any speculative analysis of future or potential income." (Doc. I.D. No. 187 at 27 (footnotes omitted).) Therefore, the Plaintiff argues, any settlement discussions with the SLC with respect to the private loans and the impact of such settlement on the availability of the Income Contingent Repayment Plan ("ICRP") is irrelevant under the third prong of *Brunner*.

Under the third prong of *Brunner*, the court must evaluate the "debtor's efforts to obtain employment, maximize income and minimize expenses." *Curiston*, 2004 WL 5200738, at *4. The court does not agree with the Plaintiff that BAPCPA impacted that analysis. Under the third prong

---

[10]   The Plaintiff also argues that "[w]here a person alleges that he is disabled a court must accept that disability as a rebuttable presumption (as must all others) in the manner and by the conditions asserted" pursuant to various regulations and the Americans with Disabilities Act. (Doc. I.D. No. 187 at 7.) The issue under Code § 523(a)(8) sought to be resolved here does not require consideration of such regulations and statutes. Consequently, a presumption of disability pursuant to those regulation and statutes cannot be made here. The court makes no determination at this time as to whether the "determination letters" (if admissible) are sufficient evidence to shift the burden of going forward (but not the risk of nonpersuasion) to some extent to ECMC.

of *Brunner*, ECMC may (among other things) solicit testimony or introduce admissible evidence of the Plaintiff's failure to apply for an ICRP. However, the court notes that the failure of the Plaintiff to participate in an ICRP may not *per se* constitute bad faith but may be deemed a relevant inquiry under the "good faith" prong. S*ee Curiston*, 2004 WL 5200738, at *5. The Plaintiff has not satisfied this prong of *Brunner* as a matter of law and the court will not restrict ECMC on any otherwise admissible evidence it may seek to introduce here.

      **C.**      **Second Motion in Limine, Second Limine Objection, Motion To Compel and Motion To Compel Objection**

In the Second Motion in Limine, the Plaintiff seeks to preclude evidence at trial of any discussions and/or communications with SLC regarding any private loans and any potential, prospective or actual settlement, satisfaction or treatment of such loans. The Plaintiff argues further that any settlement discussions are protected by Rule 26 of the Federal Rules of Civil Procedure and are inadmissible under Rule 408 of the Federal Rules of Evidence.

Under Rule 408 of the Federal Rules of Evidence, "[e]vidence of . . . accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." Fed. R. Evid. 408. The Rule "does not prohibit the use of compromise evidence if it is offered to prove something other than liability for or invalidity of a claim or its amount." 23 C. A. Wright & K. W. Graham, Jr., *Federal Practice and Procedure* § 5310, at 250 (1980). *See also In re WorldCom, Inc.*, No. 02-13533 (AJG), 2007 WL 1836599, at *4 (Bankr. S.D.N.Y. June 26, 2007) (Rule 408 "excludes evidence of settlement negotiations that is intended to prove liability for a claim.")

As noted above, ECMC seeks to compel the production of documents not to challenge the validity or amount of the private loans but to establish the lack of good faith of the Plaintiff under the third *Brunner* prong and/or to challenge the credibility of the Plaintiff. That proposed use of settlement discussions (and the proposed discovery) is permissible under Rule 408.[11] Accordingly, the Motion To Compel will be granted and the Second Motion in Limine will be denied.[12]

### III. CONCLUSION

For the reasons discussed above, it is hereby **ORDERED** that:

(1) the First Motion in Limine is denied;

---

[11] The Plaintiff cites to *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003), as support for his argument that settlement discussions are privileged and protected from discovery by Rule 408. In that case, the Court of Appeals addressed for the first time the issue of whether statements made in furtherance of settlement between two parties in an action (where the court issued a confidentiality order in respect of such settlement negotiations) are discoverable by a third party in another action against the settlement parties. In holding that such statements are privileged and protected, the court determined that a formal settlement privilege should be recognized in light of (among other things) the important public interest served by favoring settlements and allowing parties to "feel uninhibited in their communications." *Id.* at 980. In addressing the impact of Rule 408 on this new settlement privilege, the court stated that the "confidentiality order [did] . . . not prevent [the third party] . . . from using the *existence* of *Goodyear I* settlement talks for 'another purpose.'" *Id.* at 981. (emphasis in original). Because the third party was seeking to utilize the statements "for the substantive purpose of proving the exact question at issue, to wit, whether the hoses were defectively designed" and not for "another purpose," the statements were inadmissible under Rule 408. *Goodyear Tire, supra* at 982. The court also found the statements to be irrelevant. *But see In re Subpoena Issued to Commodity Futures Trading Comm'n*, 370 F. Supp. 2d 201, 211 (D. D.C. 2005), *aff'd on other grounds*, 439 F.3d 740 (D.C. Cir. 2006) (emphasis in original) (rejecting *Goodyear Tire* and finding no federal privilege from third party discovery; "Congress chose to promote [the goal of encouraging settlement outside of the judicial process] . . . through limits on the *admissibility* of settlement material rather than limits on their *discoverability*.") Here, as noted above, ECMC does not challenge the existence, validity or amount of the private loans but seek discovery of the settlement discussions for a "legitimate, admissible use." *Goodyear Tire*, 332 F.3d at 983. Further, the court finds such information relevant to ECMC's case. The court has reviewed the other authorities cited by the Plaintiff and finds them to be either inapposite or otherwise unpersuasive.

[12] The Plaintiff's argument made with respect to Rule 26 also is unavailing.

(2) the First Limine Objection is sustained;

(3) the Second Motion in Limine is denied;

(4) the Second Limine Objection is sustained;

(5) the Motion To Compel is granted to the extent that the Plaintiff is ordered to produce, in accordance with Fed. R. Bankr. P. 7034, the requisite documents to ECMC on or before October 10, 2008; provided, however, the issue of sanctions is deferred until after resolution of this adversary proceeding; and

(6) the Motion To Compel Objection is overruled.[13]

Dated: September 24, 2008                                BY THE COURT

*Lorraine Murphy Weil*
**Lorraine Murphy Weil**
**United States Bankruptcy Judge**

---

[13] The Plaintiff hereby is placed on notice that, in the event he files a motion seeking reconsideration of this decision, such motion will summarily be denied without notice or hearing.