## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |  |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 06-31447 (LMW) |
| ROGER JOHN TRAVERSA, | ) | CHAPTER | 7 |
| DEBTOR. | ) |  |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |  |
|---|---|---|---|
| ROGER JOHN TRAVERSA, | ) | ADV. PRO. NO. | 06-3109 |
| PLAINTIFF | ) | DOC. I.D. NO. | 16 |
| vs. | ) |  |  |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION and STUDENT LOAN CORPORATION, | ) |  |  |
| DEFENDANTS. | ) |  |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### APPEARANCES

Roger John Traversa                    Debtor/ Defendant *Pro Se*
114 Harmony Hill Road
Harwinton, CT 06791

Irve J. Goldman, Esq.                  Attorneys for Educational Credit
Jessica Grossarth, Esq.                  Management Corporation
Pullman & Comley, LLC
850 Main Street
Bridgeport, CT 06604

### MEMORANDUM OF DECISION
### RE: DISCHARGEABILITY OF STUDENT LOAN DEBT

Lorraine Murphy Weil, Chief United States Bankruptcy Judge

The matter before the court is the above-referenced debtor's (the "Debtor") complaint (A.P. Doc. I.D. No. 16, the "Complaint")[1] seeking discharge under 11 U.S.C. § 523(a)(8) of certain student loan debts (the "SL Debt") held by the above-referenced appearing defendant, Educational Credit Management Corp. ("ECMC"), and the non-appearing defendant, The Student Loan Corporation ("SLC").[2] The court has jurisdiction over this adversary proceeding as a core matter pursuant to 28 U.S.C. §§ 157(b) and 1334 and that certain order dated September 21, 1984 of the District Court (Daly, J.) which referred to the "Bankruptcy Judges for this District" "all cases under Title 11, U.S.C., and all proceedings . . . arising under Title 11, U.S.C. . . . ." The findings of fact required by Rule 7052 of the Federal Rules of Bankruptcy Procedure are set forth below and in that certain Findings of Fact with Respect to Memorandum of Decision of Even Date Herewith (the "Findings"). Subject to that certain *Sua Sponte* Order Limiting Remote Electronic Access to Findings of Fact with Respect to Memorandum of Decision of Even Date Herewith, the Findings are incorporated herein as if fully set forth. All capitalized terms used but not defined herein have the respective meanings ascribed to the same in the Findings. The conclusions of law required by Rule 7052 are set forth in this opinion.[3]

---

[1]    References herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. __." References herein to the docket of this chapter 7 case are in the following form: "Case Doc. I.D. No. __."

[2]    An original defendant in this adversary proceeding was American Education Services/Pennsylvania Higher Education Assistance Agency (the "Original Defendant"). ECMC was substituted for the Original Defendant by order dated November 29, 2006. (*See* A.P. Doc. I.D. No. 27.) That portion of the SL Debt held by ECMC is referred to hereafter as the "ECMC Debt;" that portion of the SL Debt not held by ECMC is referred to hereafter as the "SLC Debt." For the sake of simplicity (and because it makes no difference to the result), the discussion which follows speaks as if the ECMC Debt always was held by ECMC.

[3]    The referenced bifurcated treatment was undertaken to address the Debtor's articulated privacy concerns while still giving some guidance to the bar.

## I.    BACKGROUND

### A.    The Case

The above-captioned chapter 7 case was commenced by the Debtor's *pro se* filing of a voluntary petition on September 1, 2006.  (*See* Case Doc. I.D. No. 2.)  A partial set of schedules (including a Statement of Financial Affairs) was filed therewith.  (*See id.*)  The remaining schedules were filed on September 27, 2006.  (*See* Case Doc. I.D. No. 26.)  Certain amended schedules were filed on October 6, 2006.  (*See* Case Doc. I.D. No. 34, collectively with Case Doc. I.D. Nos. 2 and 26, the "Schedules.")  The Schedules state as follows.  As of the petition date:  (a) the Debtor had no interests in real property; (b) the Debtor had personal property (including two motor vehicles) with a stated aggregate value of $21,125.00;[4] (c) the Debtor had one secured debt (an $8,800.00 lien against a motor vehicle); (d) the Debtor had no debts which would give rise to an unsecured priority claim;  and (e) the Debtor had debts (most undisputed) which would give rise to general unsecured claims in the aggregate stated amount of $140,088.38.[5]  The Schedules further state that, as of the petition date, the Debtor had no income and had monthly expenses of $3,908.50.  The Debtor's Schedule C (Property Claimed as Exempt) claimed an exemption with respect to a 2001 motor vehicle and otherwise was not noteworthy.

---

[4]    That is the correct aggregate amount based on the court's calculation of the figures stated in Schedule B (Personal Property).

[5]    Schedule F (Creditors Holding Unsecured Nonpriority Claims) alleged the total to be $114,139.18 but, from the court's calculation, that amount is incorrect.  Of the $140,088.38 (correct) amount, $113,296.00 is listed as related to "Student Loan" or "Student Loan Consolidation."

The meeting under Section 341 of the Bankruptcy Code was held on September 26, 2006 and concluded on November 14, 2006. The chapter 7 trustee filed a report of no distribution to creditors on September 28, 2006. The Debtor received his chapter 7 discharge on December 20, 2006.

### B.   The Adversary Proceeding[6]

This adversary proceeding was commenced by the Debtor by the filing of the Complaint against the Original Defendant and SLC on October 4, 2006. ECMC filed a motion to intervene on November 2, 2006 and, as set forth above, subsequently was substituted for the Original Defendant as a party defendant. ECMC filed its answer to the Complaint on November 28, 2006. (*See* A.P. Doc. I.D. No. 24.)

SLC has not appeared or otherwise defended in this case. SLC appears to have been properly served with the Complaint and related summons on October 17, 2006. (*See* A.P. Doc. I.D. No. 9.)[7] SLC has not been technically defaulted and, in fact, was served with the order (A.P. Doc. I.D. No. 314) scheduling the Trial (as hereafter defined) date. (*See* A.P. Doc. I.D. No. 315.)[8]

---

[6]     The docket of this adversary proceeding contains over 300 entries, many of which refer to collateral issues. Early on in the case, the Debtor appeared to be preparing to turn this proceeding into a trial of the entire student loan industry. By order dated February 20, 2007, the court admonished the Debtor to "focus his arguments and evidence in this adversary proceeding *solely* on his burden of proving whether he is entitled to discharge his student loan obligations under 11 U.S.C. § 523(a)(8) and the interpretive standard established in *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395 (2d Cir. 1987) . . . ." (A.P. Doc. I.D. No. 82 at 2.) Moreover, the court denied two motions for summary judgment filed by the Debtor (*see* A.P. Doc. I.D. Nos. 81, 207) in favor of a trial on the merits (as to which orders the Debtor unsuccessfully attempted to appeal). The court has endeavored to limit its summary of the history of this proceeding only to relevant events.

[7]     SLC was served through the CT Corporation System as agent for service of process.

[8]     There is some evidence in the record to indicate that the SLC Debt was held by Citibank N.A. (apparently some sort of an affiliate of SLC, *see, e.g.,* http://studentloan.citibank.com/slcsite/fr_about.htm) and was assigned by that entity to Guaranty National Insurance Company and/or Globe Indemnity Company on November 20, 2006 and by that

A trial (the "Trial") on the merits was scheduled for April 14, 2009. (*See* A.P. Doc. I.D. No. 314.)  On April 11, 2009, counsel for ECMC caused to be served upon the Debtor that certain Subpoena in an Adversary Proceeding (the "Subpoena"), a copy of which is annexed to A.P. Doc. I.D. No. 323.  The Subpoena was in the form of a subpoena duces tecum for the Trial.  Among the documents sought by the Subpoena were "[a]ll documents relating to any applications for governmental assistance or benefits you made since the commencement of  Your bankruptcy case and any rulings or determinations made on any such applications."  (A.P. Doc. I.D. No. 323 (Schedule A to Exhibit A at "Document Request" number 4).)

The day before the Trial, the Debtor produced to ECMC a certain "Notice of Decision - Fully Favorable" (proposed Debtor Exhibit A, the "SSA Decision") purportedly issued by the Social Security Administration (the "SSA") and dated March 19, 2009.  (*See* Tr. at 121-22 (testimony of the Debtor).)[9]  On the morning of the Trial, the Debtor filed a motion (A.P. Doc. I.D. No. 323, the "Motion To Quash") to quash the Subpoena.  After a hearing (on the morning of the Trial) at which the Debtor and ECMC participated, the court issued an order denying the Motion To Quash as to personal appearance but granting the Motion To Quash as to document production.  (*See* A.P. Doc. I.D. No. 325.)  After the hearing on the Motion To Quash, the Trial was convened as scheduled.

The Debtor (who is an attorney admitted to practice in Pennsylvania) appeared *pro se* at the Trial and ECMC appeared through counsel.  The Debtor testified for himself and was cross-

entity to Mountain  Peaks Financial Services, Inc. on December 18, 2006.  (*See* ECMC Exh. 13 (as hereafter defined).)  SLC does not appear in that chain of title. (*See id.*)  As late as May 30, 2007, the Debtor disputed the identity of the holder of the SLC Debt.  (*See* ECMC Exh. 13 (May 30, 2007 letter from the Debtor to Christine Homer, Esq.).)

[9]        A copy of the transcript of the Trial appears in the record as A.P. Doc. I.D. No. 332. References herein to that transcript appear hereafter in the following form:  "Tr. at __."

examined by ECMC. Also testifying for the Debtor was Scott Chambers ("Mr. Chambers"), the "eligibility service worker for the State of Connecticut Department of Social Service[s] [the "DSS"]" assigned to the Debtor's file. (*See* Tr. at 37:24-38:1 (testimony of Mr. Chambers).) ECMC has pending evidentiary objections (dealt with below) to certain of Mr. Chamber's testimony (the "Chambers Testimony"). The Debtor also offered as evidence certain documents. Most of those documents were admitted into the record as exhibits.[10] However, there are pending evidentiary objections (dealt with below) to the following proposed exhibits: proposed Debtor Exh. A (the SSA Decision, offered by the Debtor only in redacted form) and proposed Debtor Exh. J (the "Credit Bureau Reports"). ECMC did not call any witnesses but did cross-examine the Debtor and his witness. ECMC also entered certain documents into evidence as exhibits.

At the conclusion of the Trial, the court took the matter under advisement subject to briefing. The matter has been fully briefed and is ripe for decision.

## II.   EVIDENTIARY MATTERS

### A.   Exclusion of Evidence under Fed. R. Civ. P. 37(c)(1)

#### 1.   Legal Standard

ECMC argues that the DSS Initial Determination (proposed Debtor Exh. M), the SSA Decision (proposed Debtor Exh. A) and certain portions of the Chambers Testimony are subject to exclusion pursuant to Rule 37(c) of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7037). Rule 37(c) provides in relevant part as follows:

---

[10]   References hereafter to the Debtor's exhibits appear in the following form: "Debtor Exh. __." References hereafter to ECMC's exhibits appear in the following form: "ECMC Exh. __."

(1) **Failure to Disclose or Supplement.**   If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless . . . .

Fed. R. Civ. P. 37(c).[11]

On its face Rule 37(c)(1) provides for preclusion of evidence which should have been produced pursuant to Rule 26(a) or Rule 26(e) unless the court makes a determination that such nonproduction either was "substantially justified" or "harmless." "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Kunstler v. City of New York,* 242 F.R.D. 261, 264-65 (S.D.N.Y. 2007) (internal quotation marks and citation omitted). "Harmless[ness]" means an absence of prejudice to the defendant. *See Williams v. County of Orange,* No. 03 CIV 5182 (LMS), 2005 WL 6001507, at *3 (S.D.N.Y. Dec. 13, 2005). "The burden of proving substantial justification rests with the party which has failed to disclose information." *Kunstler,* 242 F.R.D. at 265. "The burden to prove harmlessness rests with the dilatory party." *Design Strategies, Inc. v. Davis,* 367 F.Supp. 2d 630, 635 (S.D.N.Y. 2005), *aff'd,* 469 F.3d 284 (2d Cir. 2006) (internal quotation marks and citation omitted).

It is not necessary for the court to find "bad faith" in order to impose sanctions pursuant to Rule 37(c). *Design Strategy,* 469 F.3d at 296.  However, even if the plaintiff fails in his burden to prove "substantial justifi[cation]" and/or "harmless[ness]," the trial court still has some discretion

---

[11]      Rule 26 of the Federal Rules of Civil Procedure is made applicable to this adversary proceeding by Rule 7026 of the Federal Rules of Bankruptcy Procedure. Rule 26(a) requires (among other things) disclosure by the plaintiff of all "documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claim . . . ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 26(e) requires the plaintiff to supplement his Rule 26(a)(1)(A)(ii) production if he learns that his initial production needs to be updated or corrected "in a timely manner." Fed. R. Civ. P. 26(e).

under Rule 37(c).  *See id.* at 297-98.  In determining whether to impose sanctions, the court must

consider

> (1)  the party's explanation for the failure to comply with the [disclosure
> requirement]; (2) the importance of the . . . [evidence to be precluded]; (3) the
> prejudice suffered by the opposing party as a result of having to prepare to meet the
> new . . . [evidence]; and (4) the possibility of a continuance [collectively, the "*Design
> Strategy* Factors"].

*Id.* at 296.  None of the *Design Strategy* Factors is mandatory but, rather, the court should weigh the

factors against each other.  *See id.* at 296-97 ("Although the second . . . factor favors Design because

Design's evidence of lost profits was essential to proving these damages, all of the other factors

weigh heavily in favor of exclusion.").

### 2.   Failure To Produce and/or Supplement

#### a.   DSS Initial Determination and Related Chambers Testimony

The Debtor admits that he did not produce his applications (collectively, the "DSS

Application") for benefits submitted to the DSS.  (*See* Tr. at 126-27 (testimony of the Debtor).)[12]

The Debtor's failure to produce the DSS Application is potentially relevant to the issue of exclusion

and/or weight of certain portions of the Chambers Testimony and of the DSS Initial Determination

(and references to the DSS Redetermination).

Mr. Chambers did not actually discuss the specifics of what the Debtor submitted to the DSS

to obtain the DSS Initial Determination.  Accordingly, it is not necessary to strike the portion of his

testimony which relates to the DSS Initial Determination.  Moreover, because the DSS Notice with

---

[12]   The Debtor testified that he did not have a copy of the DSS Application and thought
that he could not get a copy from DSS (and did not ask for one).  (*See id.* (testimony of the Debtor).)
However, Mr. Chambers testified that had the Debtor asked (which he did not), Mr. Chambers would
have made a copy of the DSS Application for the Debtor.  (*See* Tr. at 68 (testimony of Mr.
Chambers).)

respect to the DSS Initial Determination was produced to ECMC as early as July of 2007, the DSS

Notice (Exh. M) was admitted as an exhibit at the Trial.  Accordingly, references in Mr. Chambers'

testimony to the fact of the issuance of the DSS Initial Determination will remain.  In any event, as

will appear from the discussion below, on this record the court gives little weight to the DSS Notice

and the fact of the issuance of the DSS Initial Determination.

### b.        The DSS Redetermination and Related Chambers Testimony

Mr. Chambers testified as to the fact of issuance of the DSS Redetermination.  (*See* Tr. at 55

(testimony of Mr. Chambers).)  The Debtor did not produce or supplement his discovery with respect

to the DSS Redetermination or the portion (if any) of the DSS Application which related to it.

However, Mr. Chambers did not describe the substance of the DSS Redetermination although he did

testify as to the fact of its issuance, a general description of the nature of the "redetermination" and

that the Debtor continued to receive the relevant state benefits after the issuance of the DSS

Redetermination.  (*See id.*; Tr. at 64 (testimony of Mr. Chambers).)  The court does not deem it

necessary to strike that testimony.  However, given that neither the actual written DSS

Redetermination nor the particulars of the Debtor's participation in the process which produced the

DSS Redetermination is of record, the court will give the fact of the issuance of the DSS

Redetermination (and the continuance of benefits thereafter) little weight.

### c.        The SSA Decision

The Debtor's failure to produce the SSA Decision to ECMC is the most serious evidentiary

issue presented here.  It is undisputed that the Debtor did not produce the SSA Decision to ECMC

until the day before the Trial.[13]  It also is undisputed that the Debtor received the SSA Decision and

---

[13]        The Debtor also testified that he did not produce copies of applications for benefits
submitted to the SSA because he had no such copies.  (*See* Tr. at 127-28 (testimony of the Debtor).)

waited thirteen days to send it to ECMC's counsel.  (*See* Tr. at 122 (testimony of the Debtor).)  That

belated production does not satisfy the Debtor's duty "timely" to supplement under Rule 26(e).  *Cf.*

*Southern States Rack and Fixture, Inc. v. Sherwin-Williams Co.*, 212 F.R.D. 489 (D.S.C. 2001),

*aff'd*, 318 F.3d 592 (4th Cir. 2003) (Where plaintiff failed to supplement discovery with a third

opinion of its expert witness and such opinion was formulated and disclosed on the day of trial, that

opinion was properly excluded at trial as an untimely disclosure as a sanction under Rule 37(c)

because the defendant was surprised by the new opinion, it had no ability to cure the surprise,

granting a continuance would disrupt the trial and plaintiff could not explain why it failed to

supplement its discovery responses upon learning of the new opinion and plaintiff's motion for a

new trial was denied.).  Moreover, the Debtor gives no real explanation for the eve-of-Trial

production and certainly not one which would rise to the level of "substantial[] justifi[cation]."

Furthermore, the prejudice to ECMC of having to deal with the SSA Decision on one-day's notice

is obvious.  Accordingly, the court concludes that the Debtor has proved neither "substantial[]

justifi[cation]" nor "harmless[ness]."

With respect to the *Design Strategy* Factors, the second factor favors the Debtor because the

SSA Decision could (if properly presented) be important to his case.[14]  However, the remaining

*Design Strategy* Factors favor ECMC and outweigh the second factor.  With respect to the first

factor, the Debtor has not offered a convincing explanation for his delay.  With respect to the third

factor, ECMC would have had to deal (unprepared) with significant new evidence on the very eve

---

[14]      However, the weight the court would give the SSA Decision even without the present
evidentiary challenge would be adversely affected by the fact that the Debtor offered it into the
record in substantially redacted form.  Moreover, in a manner similar to his production with respect
to the DSS Initial Determination, the Debtor failed to provide background documentation with
respect to the SSA Decision and that also would adversely affect its weight.

of trial.  With respect to the fourth factor ("possibility of a continuance"), the matter has been tried and fully briefed.  It is not realistic for the court to reopen the record to permit ECMC to conduct further discovery on the SSA Decision and to present further evidence.  Moreover, when ECMC sought what was in substance further discovery on the morning of the Trial pursuant to the Subpoena, the Debtor successfully resisted pursuant to the Motion To Quash.  It is disingenuous for the Debtor now to argue that ECMC should have further asked for a continuance.

For the reasons set forth above, proposed Debtor Exh. A is excluded from the record.[15]

### B.      Hearsay-Residual Exception (Credit Bureau Reports)

ECMC objected at the Trial to admission of the proposed Debtor Exh. J (the Credit Bureau Reports) as inadmissable hearsay.  The Debtor does not argue that those reports are not hearsay but, rather, argues that they nevertheless are admissible pursuant to the so called "residual" hearsay exception under Rule 807 of the Federal Rules of Evidence.

Rule 807 provides:

A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.  However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair

---

[15]     Mr. Chambers does not appear to have testified with regard to the SSA Decision. However, Mr. Chambers did testify as to the fact of entry of the Prior SSA Decision and the SSA's payment of benefits to the Debtor.  (*See* Tr. at 55-57 (testimony of Mr. Chambers).)  At the Trial, the court allowed that testimony to come in (*see id.* at 57 (court ruling)).  The court stands by that decision.  However, because a copy of the Prior SSA Decision is not of record, and because of the lack of background documentation, the court attaches little significance to that portion of Mr. Chamber's testimony.

opportunity to prepare to meet it, the proponent's intention to offer the statement and
the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 807.  The record made by the Debtor here is insufficient for the court to determine that

there are the "equivalent circumstantial guarantees of trustworthiness" required by Rule 807.  *Cf.*

*Cruz v. MRC Receivables Corp.,* 563 F.Supp. 2d 1092, 1095-96 (N.D. Cal. 2008) (finding credit

bureau reports constituted inadmissible hearsay).  Accordingly, proposed Debtor Exh. J is excluded

from the record as inadmissible hearsay.

## III.    ANALYSIS

### A.    Legal Standards

It is undisputed that the SL Debt is the type of a debt that is within the purview of Bankruptcy

Code § 523(a)(8).  Section 523(a) provides in relevant part as follows:

> (a)  A discharge under section 727 . . . of this title does not discharge an individual
> debtor from any debt–
> > . . .
> (8)  unless excepting such debt from discharge under this paragraph would
> impose an undue hardship on the debtor and the debtor's dependents, for –
> > (A)(i)    an educational benefit overpayment or loan made, insured or
> > guaranteed by a governmental unit, or made under any program funded in
> > whole or in part by a governmental unit or nonprofit institution; or
> > (ii)    an obligation to repay funds received as an educational benefit,
> > scholarship or stipend; or
> > (B)  any other educational loan that is a qualified education loan, as defined
> > in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a
> > debtor who is an individual.

11 U.S.C.A. § 523(a)(8) (West 2010).[16]  "A student loan will not be discharged unless the debtor

affirmatively secures a hardship determination."  *Santamassino v. New Jersey Higher Educ. Student*

*Assistance Auth. (In re Santamassino),* 373 B.R. 807, 810 (Bankr. D. Vt. 2007) (internal quotation

marks and citation omitted).  *But see United Student Aid Funds, Inc. v. Espinosa*, No. 08-1134, 2010

WL 1027825 (S.Ct. Mar. 23, 2010) (holding that a discharge order in a chapter 13 case was not void

for purposes of Fed. R. Civ. P. 60(b)(4) and student loan debt was discharged under general

discharge order even though bankruptcy court had not made an express determination of undue

hardship where chapter 13 debtor's proposed treatment of student loan debt in plan was not objected

to by creditor and plan was confirmed).  "The burden of proof in a § 523(a)(8) proceeding on the

issue of undue hardship rests on the debtor."  *Curiston v. Connecticut Student Loan Found. (In re*

*Curiston),* No. 03-2097, 2004 WL 5200738, at *3 (Bankr. D. Conn. Dec. 22, 2004) (Krechevsky,

J.), *aff'd,* 351 B.R. 22 (D. Conn. 2006).  The standard of proof is the "preponderance of the

evidence" standard.  *Santamassino,* 373 B.R. at 810.  The debtor bears the initial burden of

production and the risk of nonpersuasion on "undue hardship."  *See Tucker v. Sallie Mae, Inc. (In*

*re Tucker),* No. 08-1159 (JMD), 2009 WL 2877906, at *5 (Bankr. D. N.H. Sept. 3, 2009).  Once the

debtor has made out a *prima facie* showing that would support a determination of "undue hardship,"

the burden of production then shifts to the student loan creditor(s) to present credible evidence

calling into question at least one of the *Brunner* elements.  *See id.*; *Votruba v. Florida Dep't of Educ.*

---

[16]     The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 did not
effect any change in the "undue hardship" test.  *See Barrett v. Educ. Credit Mgmt. Corp. (Barrett),*
487 F.3d 353, 364 (6th Cir. 2007) ("[In 2005,] Congress . . . enacted the most sweeping reform of
bankruptcy law since the enactment of the Bankruptcy Code in 1978.  Yet Congress left
§ 523(a)(8)'s 'undue hardship' language intact." (internal quotation marks, citations and footnote
omitted)).  *See also Educ. Credit Mgmt. Corp. v. Jesperson,* 571 F.3d 775, 785 (8th Cir. 2009).

*(In re Votruba),* 310 B.R. 698, 704 (Bankr. N.D. Ohio 2004).[17]  However, if the creditor satisfies that

burden, the risk of nonpersuasion on the relevant element(s) is with the debtor.  *Allen v. American*

*Educ. Servs. (In re Allen),* 324 B.R. 278, 283 (Bankr. W.D. Pa. 2005) (debtor bears "the ultimate

burden of persuasion on the issue of undue hardship"); *Newman v. Educ. Credit Mgmt. Corp.,* 304

B.R. 188, 197 (Bankr. E.D. Pa. 2002) (same).  *But see Perry v. Student Loan Guarantee Found. of*

*Arkansas (In re Perry),* 239 B.R. 801 (Bankr. W.D. Ark. 1999);[18] *Fox v. Pennsylvania Higher Educ.*

*Assistance Agency (In re Fox),* 163 B.R. 975, 978 (Bankr. M.D. Pa. 1993) ("[I]t is the burden of the

debtor to go forward with evidence of 'undue hardship.' . . .  Having done that, the ultimate burden

of proving that this type of hardship is not present is the creditor's.").

"Undue hardship" within the purview of Section 523(a)(8) is not defined in the Bankruptcy

Code.  In *Brunner*, the Second Circuit articulated the standard which the debtor must satisfy to

establish "undue hardship" within the purview of Section 523(a)(8).  That standard requires the

debtor to establish:

> (1) that the debtor cannot maintain, based on current income and expenses, a
> "minimal" standard of living for herself and her dependents if forced to repay the
> loans;

---

[17]    A party has made out a *prima facie* case on an issue if a reasonable trial court could
find for that party on that issue on such showing.  *See Fisher v. Vassar College,* 114 F.3d 1332 (2d
Cir. 1997) (en banc), *cert. denied,* 522 U.S. 1075 and *reh'g denied,* 523 U.S. 1041 (1998) (*abrogated
on other grounds by Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000)).

[18]    Once the debtor makes a credible showing that undue hardship exists,
the burden of production shifts to the creditor to present some
evidence to rebut the debtor's case.  If the trier of fact remains in
doubt as to a fact after the burden of production shifts to the creditor,
then the creditor has failed to satisfy its burden and the trier of fact
must find that undue hardship exists.

*Id.* at 808-09.

-14-

(2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and

(3) that the debtor has made good faith efforts to repay the loans.

*Brunner,* 831 F.2d at 396.[19] "If a debtor cannot satisfy every prong of the *Brunner* test, she is not entitled to discharge the student loan." *Santamassino,* 373 B.R. at 810. "'Equitable concerns or other extraneous factors not contemplated by the *Brunner* framework may not be imported into the court's analysis to support a finding of dischargeability.'" *Davis v. Educ. Credit Mgmt. Corp. (In re Davis),* 373 B.R. 241, 245 (W.D.N.Y. 2007) (*quoting Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 306 (3d Cir. 1995) (adopting and applying *Brunner*)).

In applying the first prong of the *Brunner* test,

> the court will consider the debtor's income, living expenses and standard of living. A debtor is not expected to live in "abject poverty" in order to repay a student loan. Accordingly, the federal poverty level is too strict a standard for measuring whether the debtor's standard of living is at a minimal level and should not be employed for that purpose. Nor is it appropriate for the court to go through a debtor's budget dollar-for-dollar in order to find every possible way to create or increase a surplus if the overall expense level and living standard remains minimal. Rather, the court should examine the debtor's income and expenses in a manner that is sensitive to the particular circumstances of the case, taking into account the debtor's needs for care,

---

[19]     The Debtor cites *Transworld Airlines, Inc. v. Hardison,* 432 U.S. 63 (1977), and *Webb v. City of Philadelphia,* 562 F.3d 256 (3d Cir. 2009), for the proposition that "undue hardship" is not a difficult threshold to meet. *But see, e.g., In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993) (making reference to the "heightened standard for dischargeability of student loans"); *In re L.K. ,* 351 B.R. 45, 52 (Bankr. E.D.N.Y. 2006) (stating that the standard for discharge under Section 523(a)(8) is a "'heavy burden' for any debtor"). Both *Transworld Airlines* and *Webb* deal with "undue hardship" in the context of Title VII of the Civil Rights Act of 1964 on the issue of whether a workplace accommodation would constitute an undue hardship. The term "undue hardship" may be the same but the respective legislative histories and purposes behind Title VII and Section 523(a)(8) are materially different. Accordingly, the court concludes that *Transworld Airlines* and *Webb* are inapposite here. In any event, in characterizing the debtor's burden under Section 523(a)(8) the relevant concerns are the three prongs of the *Brunner* test (and their proper interpretation and application) and an analysis of the burden of proof under Section 523(a)(8) (discussed above). Adjectives and adverbs are not materially helpful to that analysis.

including food, shelter, clothing, transportation[,] medical treatment and a small source of recreation.

4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 523.14[2], at 523-104–503-105 (16th rev. ed. 2009) (footnotes omitted) ("*Collier on Bankruptcy*"). The first prong of the *Brunner* test is determined as of the time of trial. *Educ. Credit Mgmt. Corp. v. Kelly (In re Kelly)*, 312 B.R. 200, 204 (B.A.P. 1st Cir. 2004) ("Undue hardship is measured as of the date of trial."); *Cota v. U.S. Dep't of Educ. (In re Cota)*, 298 B.R. 408, 415 (Bankr. D. Ariz. 2003) ("In order to determine if a debtor can maintain a minimal standard of living if required to pay a student loan debt, the court must review the income and expenses of the debtor at the time of trial."). *Cf. United Student Aid Funds, Inc. v. Pena*, 155 F.3d 1108 (9th Cir. 1998).[20]

> The second prong of *Brunner* requires that the debtor show additional circumstances indicating that she will be unable to repay the loans and maintain a minimal standard of living for a significant portion of the repayment period. This standard properly recognizes that a student loan is viewed as a mortgage on the debtor's future. However, the debtor need not show a certainty of hopelessness. Instead, the court must take a realistic look into the debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like. The court should base its estimation of a debtor's future prospects on specific articulable facts, not unfounded optimism, and the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan. The discharge of a student loan should be based upon an inability to earn and not simply a reduced standard of living.

---

[20]    Although the *Brunner* test looks to the debtor's "current" income and expenses, where the evidence suggests that the debtor's income or expenses tend to fluctuate, it is not inappropriate to average figures over a reasonable period of time. To require strict reliance upon conditions existing at the moment of trial could result in an accurate snapshot but a distorted picture. We do not believe Congress intended to impose upon the debtor or the bankruptcy court such a narrow focus.

*Id.* at 1112. As neither the Debtor's income nor expenses fluctuated during the pendency of this bankruptcy case, the court does not need to address here the concerns raised by *Pena.*

*Robinson v. Educ. Credit Mgmt. Corp. (In re Robinson),* 390 B.R. 727, 731-32 (Bankr. W.D. Okla.

2008) (internal quotation marks and citations omitted).  *See also Brunner,* 831 F.2d at 396 (a

showing of "additional, exceptional circumstances, strongly suggestive of continuing inability to

repay over an extended period of time" required).[21]   A disability or illness is relevant only if it

"restrict[s] the debtor's ability to obtain and sustain a level of income sufficient to repay a student

loan."  *Porrazzo v. Educ. Credit Mgmt. Corp. (In re Porrazzo),* 307 B.R. 345, 348 (Bankr. D. Conn.

2004) (Shiff, J.).  The second prong of the *Brunner* test is determined as of the time of trial.  *See In*

*re Kelly,* 312 B.R. at 204.

> The final prong of the *Brunner* test requires a debtor to show that he has made good
> faith efforts to repay the loans, and is measured by the debtor's efforts to obtain
> employment, maximize income, and minimize expenses.  Many courts of appeal have
> held that a debtor's effort to seek out loan consolidation options that make the debt
> less onerous is an important component of the good faith inquiry, as it illustrates that
> the debtor takes her loan obligations seriously and is doing her utmost to repay them
> despite her unfortunate circumstances.  This represents an indicia of good faith, but
> it is not a *per se* requirement, and this Court does not deem it mandatory.

*King v. Vermont Student Assistance Corp. (In re King),* 368 B.R. 358, 373 (Bankr. D.Vt. 2007)

(internal quotation marks and citations omitted).  *Accord Curiston,* 351 B.R. at 33 (the debtor's entry

into an ICRP is not *per se* necessary to a finding of good faith but failure to enter into an ICRP may

be considered along with other factors.).  *Cf. Jesperson,* 571 F.3d at 780-81 ("When the size of the

debts is the principal basis for a claim of undue hardship, [the availability of an ICRP]. . . become[s]

---

[21]        The Debtor has argued throughout this proceeding that the Agency Determinations
are conclusive on the second *Brunner* prong as a matter of law under the doctrine of "primary
jurisdiction." (*See, e.g.,* A.P. Doc. I.D. No. 187.)  The Debtor also has argued that all of the prongs
of the *Brunner* test are satisfied here as a matter of law.  (*Id.*)  All of the foregoing arguments were
rejected by the court in a Memorandum of Decision and Order Re: Motions in Limine and Motion
To Compel.  *See In re Traversa,* No. 06-3109, 2008 WL 4681844, at *3-4 (Bankr. D. Conn. Sept.
24, 2008) (the "Prior Opinion").   The court hereby reaffirms those determinations and all other
material determinations set forth in the Prior Opinion.

more relevant . . . ."); *Booth v. U.S. Dep't of Educ. (In re Booth),* 410 B.R. 672, 677 (Bankr. E.D. Wa. 2009) (Chapter 7 debtor was not precluded from establishing an inability to maintain minimal standard of living for herself and her dependents if forced to repay her loans, based upon her current income and expenses, by virtue of having a zero monthly payment obligation under an income contingent repayment loan program.).  "The good faith requirement 'encompasses a notion that the debtor may not willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control.'" *Benjumen v. AES/Charter Bank (In re Benjumen),* 408 B.R. 9, 21 (Bankr. E.D.N.Y. 2009) (*quoting Elmore v. Massachusetts Higher Educ. Assistance Corp. (In re Elmore),* 230 B.R. 22, 27 (Bankr. D. Conn. 1999) (Dabrowski, J.) (internal quotation marks omitted)).  The third prong of the *Brunner* test is evaluated through to the date of trial.  *See In re Kelly,* 312 B.R. at 204.[22]

---

[22]      At least one court has commented upon a perceived "disconnect" between the second and third *Brunner* requirements.

The relevance of the third *Brunner* requirement to an "undue hardship" determination is questionable.  Where true undue hardship exists (as determined by satisfaction of the first and second *Brunner* requirements), even an outright admission by a debtor that she has been running from student loan creditors should not prevent application of the straightforward § 523(a)(8) exception.  On the other hand, a debtor's unquestioned good-faith Herculean efforts to repay student loan debt, while commendable, should not be permitted to cloud the issue in determining whether undue hardship exists.

*Ulm v. Educ. Credit Mgmt. Corp.,* 304 B.R. 915, 921 n.2 (S.D. Ga. 2004).

**B.** **Application of Law to Facts**

**1.** **Minimal Standard of Living (First *Brunner* Prong)**[23]

The Debtor lives with his mother in Litchfield County, Connecticut on a rent-deferred basis. (*See* Tr. at 75 (testimony of the Debtor).) A grown man should not have to live like that indefinitely.[24] The Debtor also testified as to some of his living expenses. (*See id.* at 107-09 (testimony of the Debtor).) Given the Debtor's circumstances here, the court concludes that a reasonable trial court could find that $1,577.00 per month is not sufficient to meet the Debtor's "needs for care, including food, shelter, clothing, transportation[,] medical treatment and a small source of recreation." *Collier on Bankruptcy* ¶ 523.14[2], at 523-105. *Cf. Porrazzo,* 307 B.R. at 349 ("Common sense compels the conclusion that a person residing in Fairfield County, Connecticut with an annual disposable income of $7,080.00 will not have the means to afford much more than bare necessities."). That *prima facie* case has not been rebutted by ECMC. Accordingly, the court finds/concludes that the first *Brunner* prong has been satisfied.

**2.** **Persistence of Additional Circumstances (Second *Brunner* Prong)**

**a.** **The Agency Determinations**

As noted above, it has been the Debtor's position throughout these proceedings that the mere fact of entry of the Agency Determinations is conclusive on the second *Brunner* prong under the

---

[23] The court previously rejected the Debtor's argument that the first *Brunner* prong is to be determined solely with respect to his "means test," *see* 11 U.S.C. § 707(b)(2). *See Traversa,* 2008 WL 4681844, at *3. The court stands by that decision and incorporates it herein as if fully set forth.

[24] The Debtor testified at the Trial that his living arrangement was "not a comfortable situation . . . ." (Tr. at 75:23 (testimony of the Debtor).)

-19-

doctrine of primary jurisdiction.  As also noted above, this court has previously rejected that position

in the Prior Opinion.  However, in the Prior Opinion the court further stated:

> [T]he "determination letter[s]" may be admissible as some evidence that the . . .
> [Debtor] is (and will continue to be) disabled and unable to work . . . .  The court
> makes no determination at this time as to whether the "determination letters" (*if
> admissible*) are sufficient evidence to shift the burden of going forward . . . to some
> extent to ECMC.

*In re Traversa,* 2008 WL 4681844, at *4 & n.10 (emphasis added).

As the foregoing indicates, this court is open to the concept that, under appropriate

circumstances, an agency determination could be sufficient to constitute at least a *prima facie* case

on the second *Brunner* prong.  However, this court cannot make that decision on a "sight unseen"

basis.  Accordingly, because none of the Agency Determinations are properly of record (and perhaps

because insufficient evidence is in the record with respect to the background thereof), they cannot

constitute a *prima facie* case for the Debtor on the second *Brunner* prong.  *Cf. Congdon v. Educ.

Credit Mgmt. Corp. (In re Congdon),* 365 B.R. 433, 439-42 (Bankr. D. Vt. 2007) (addressing the

issue of admissibility of a SSA ALJ's notice of decision in a Bankruptcy Code § 523(a)(8) action,

the court determined that because the notice of decision contained factual findings resulting from

a factual investigation, the document was presumed to be trustworthy under Fed. R. Evid. 803(8)(C)

and could be admitted into evidence).  Accordingly, the court will next consider whether the record

otherwise constitutes a *prima facie* case for the Debtor on the second *Brunner* prong.

### b.     <u>The Record</u>

The court substantially credits the Debtor's testimony to the effect that he suffers from

various conditions that negatively impact his ability to earn a living (at least as of the time of Trial).

However, what is missing is a *prima facie* case as to prognosis (*i.e.,* "persist[ence]").  The Debtor's

testified as to his opinion of his prognosis. There may be some conditions as to which a debtor is competent to testify as to prognosis. However, the conditions described by the Debtor are such that he is not competent to testify as to prognosis. *Cf. In re Congdon*, 365 B.R. at 438-39; *Norasteh v. Boston University (In re Norasteh)*, 311 B.R. 671, 678 (Bankr. S.D.N.Y. 2004) (After stating that "[a]t a minimum, . . . a borrower seeking . . . 'an undue hardship' discharge must provide corroborative evidence that he had an impairment that prevents him from earning enough to repay his student loans, and that the impairment is likely to persist well into the future," the court concluded that the Debtor failed to satisfy the second *Brunner* prong because he did not "submit medical reports identifying his symptoms, diagnosing his condition, or indicating its severity or probable duration.").[25] Accordingly, in the absence of a *prima facie* case, the court concludes that the second *Brunner* prong has not been satisfied.

### 3.    Good Faith (Third *Brunner* Prong)

Because the court has concluded that the Debtor has failed to satisfy the second *Brunner* prong, it is neither necessary nor appropriate to consider the "good faith" prong. *See Faish,* 72 F.3d

---

[25]    The court notes that at least one court has noted that corroboration is not limited to expert medical testimony but "other forms of corroborating evidence may suffice . . . to corroborate a debtor's claim of undue hardship based on illness. Medical bills, letters from treating physicians, and other medical records or expert medical testimony may corroborate a debtor's claim of undue hardship based on the debtor's health." *Barrett*, 487 F.3d at 361. In *Barrett*, the court concluded that "[w]here . . . the debtor testifies credibly and without rebuttal about his medical history, his current health, his employment history, and his ability to perform work functions– and that testimony is corroborated in part by a letter from the debtor's treating physician and tax records–the debtor has offered proof sufficient to support a finding of undue hardship." *Id.* at 363. An insufficient record exists here for that purposes.

at 306 ("If one of the requirements of the *Brunner* test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability.").[26]

## IV.   SLC DEBT

The result as to the ECMC Debt does not necessarily dictate the result as to the SLC Debt. That is so because the court may permit the Debtor to supplement the record as to SLC (including an unredacted copy of the SSA Decision).[27]  With the record adequately supplemented, the Debtor may be able to make out a *prima facie* case against SLC with respect to all three prongs of the *Brunner* test.  However, for the reasons set forth in note 8, *supra*, the court has concerns as to whether the alleged dischargeability claim against SLC is justiciable.  Accordingly, the court hereby reopens the proceedings *as to SLC only* and continues them to a date to be announced.

## V.    CONCLUSION

For the reasons set forth above, the court concludes that the ECMC Debt was not discharged in this chapter 7 case.  A separate conforming judgment will issue.  These proceedings are reopened *as to SLC only* and are continued to a date to be announced.  A separate order will issue scheduling a status conference in such reopened proceedings.

Dated: April 15, 2010                              BY THE COURT

                                        *Lorraine Murphy Weil*
                                    **Lorraine Murphy Weil**
                              **Chief United States Bankruptcy Judge**

---

[26]    The court has considered all of the Debtor's remaining arguments and finds them inapposite or otherwise unpersuasive.

[27]    Unlike ECMC, SLC has ignored these proceedings and can hardly claim "surprise" or the like with respect to the SSA Decision in particular and/or such reopened proceedings in general.

-22-